IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


FREDERICK W. ODOM,                          :

     Plaintiff,                                :

vs.                                         :        CA 11-0492-C

MICHAEL J. ASTRUE,                          :
Commissioner of Social Security,

                         :

     Defendant.


## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 12 & 14 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments

of the parties at the March 25, 2012 hearing before the Court, it is determined that the Commissioner's decision denying plaintiff benefits should be affirmed.[1]

Plaintiff alleges disability due to rupture and surgical repair of the right Achilles tendon, knee pain, cardiomyopathy, and status-post partial amputation of the right long finger. The Administrative Law Judge (ALJ) made the following relevant findings:

**1.      The claimant last met the insured status requirements of the Social Security Act on September 30, 2004.**

**2.      The claimant did not engage in substantial gainful activity during the brief period from his alleged onset date of June 4, 2004 through his date last insured of September 30, 2004 (20 C.F.R. § 404.1571 *et seq.*).**

**3.      Through the date last insured, the claimant had the following medically determinable impairment: rupture and surgical repair of the right Achilles tendon (20 C.F.R. § 404.1521 *et seq.*).**

On September 22, 2004, the claimant complained about acute pain in his right Achilles tendon, and his physician noted that the plan was to proceed with a surgical repair of his distal Achilles tendon rupture.

**4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 C.F.R. § 404.1521 *et seq.*).**

Basic work activities are the abilities and aptitudes necessary to do most jobs. Examples of these include:

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 12 & 14 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

1. Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

2. Capacities for seeing, hearing, and speaking;

3. Understanding, carrying out, and remembering simple instructions;

4. Use of judgment;

5. Responding appropriately to supervision, co-workers, and usual work situations; and

6. Dealing with changes in a routine work setting (SSR-85-28).

In reaching the conclusion that the claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities, the Administrative Law Judge has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. The Administrative Law Judge has also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

In considering the claimant's symptoms, the Administrative Law Judge must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the Administrative Law Judge must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity. persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the Administrative Law Judge must make a finding on the credibility of the statements based on a consideration of the entire case record.

On September 22, 2004, the claimant complained about acute pain in his right Achilles tendon, and his physician noted that the plan was to proceed with a surgical repair of his distal Achilles tendon rupture. The claimant had surgery, and his follow up continued until February 2005. On January 26, 2005, William A. Roberts, M.D. noted that the claimant could continue wearing his boot walker while working, but he could slowly discontinue its use when walking around the house. On February 28, 2005, Dr. Roberts noted that the claimant was doing well and having only slight discomfort near the level of the tendinous reattachment. Dr. Roberts further noted that the claimant was able to ambulate without antalgic gait. He noted that the claimant could begin riding a bike, gently walking on the treadmill without grade, and he stated that the claimant could slowly increase his activities as tolerated. The claimant did not return to Bayside Orthopaedic [S]ports [M]edicine [Center] again until over two years later on August 30, 2007, and his visit related to a new impairment that is outside the date last insured. Therefore, although the claimant's medically determinable impairment of distal Achilles tendon rupture began prior to the date last insured, it only lasted for five months.

After considering the evidence of record, the Administrative Law Judge finds that although the claimant's medically determinable impairment began prior to the claimant's date last insured, it did not last for the required twelve-month durational period. Therefore, this impairment cannot be considered a severe impairment.

It should be noted that the medical records detail other impairments, but these have all occurred outside the period of consideration. All impairments within the period of consideration did not last for twelve months; therefore, the claimant has no severe impairment and cannot be found disabled, as the sequential evaluation ends at step two, regarding the existence of a severe impairment during the period prior to the expiration of claimant's insured status.

**5.      The claimant was not under a disability, as defined in the Social Security Act, at any time from June 4, 2004, the alleged onset date, through September 30, 2004, the date last insured (20 C.F.R. § 404.1520(c)).**

(Tr. 11-13 (internal citations omitted).)  The Appeals Council affirmed the ALJ's decision

(Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner

of Social Security.

## DISCUSSION

A claimant is entitled to an award of disability insurance benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a) (2011). In determining whether a claimant has met his burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, if a claimant is performing substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). At the second step, if a claimant does not have an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities, he is not disabled. 20 C.F.R. § 404.1520(c). At step three, if a claimant proves that his impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 404.1520(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, he must prove that his physical and/or mental impairments prevent him from performing his past relevant work. 20 C.F.R. § 404.1520(e). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987),

5

and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[2] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that through the date last insured of September 30, 2004 he did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as

---

[2]     *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3]

In this case, the plaintiff contends that the ALJ made the following errors: (1) he erred in failing to consider all the evidence in the record, including relevant evidence of cardiomyopathy, status-post right knee arthroscopy, and status-post partial amputation of the right long finger; and (2) he erred in failing to obtain medical expert testimony regarding the onset of disability.

A.    **Entire Medical Evidence of Record Argument**. Plaintiff's primary argument is that the ALJ erred in failing to consider all the evidence in the record, including relevant evidence of cardiomyopathy, status-post right knee arthroscopy, and status-post partial amputation of the right long finger.[4]

It is certainly a well-recognized general proposition of social security case law that an ALJ must state with particularity the weight accorded "to each item of evidence[,]" *Randolph v. Astrue*, 291 Fed.Appx. 979, 982 (11th Cir. Sept. 10, 2008). In other words, it is clear that an ALJ "'should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence.'" *Brunson v. Astrue*, 2011 WL 839366, *12 (M.D. Fla. Mar. 7, 2011). However, because it is also clear in this Circuit that "there is no rigid requirement that the ALJ specifically refer

_____

[3]    This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[4]    During oral arguments on June 25, 2012, counsel for plaintiff also mentioned the degenerative changes in Odom's c-spine and the numerous pre-cancerous and cancerous lesions removed from his skin.

to every piece of evidence in his decision," *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (2005), it bears recognizing that, at bottom, what the ALJ need do is "explain why '***significant probative evidence*** has been rejected.'" *Brunson, supra,* at *12 (emphasis supplied), quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). Such recognition is particularly apt in the instant case given the unusual circumstance of the short approximately four-month window between plaintiff's disability onset date of June 4, 2004 and the expiration of his insured status on September 30, 2004 in combination with the undeniable fact that the only significant probative evidence of record during this period is that evidence discussed by the ALJ in his decision regarding the rupture and repair of plaintiff's right Achilles tendon. (*See* Tr. 233-238 & 271-292.)

As for the other impairments the ALJ allegedly ignored, such as cardiomyopathy, status-post right knee arthroscopy with pain, status-post partial amputation of the right long finger, degenerative changes of the c-spine, and skin lesions, there is simply no significant probative evidence of any of these impairments during the aforementioned four-month window. Indeed, there was scant, if any mention, of these alleged impairments during the four-month window within which plaintiff was required to establish his disability and certainly no evidence on the level of the rupture and surgical repair of plaintiff's right Achilles tendon for so much as an inference to arise that these impairments might have been severe, much less disabling. For instance, though Odom lost part of his right long finger in 1995 (*see, e.g.,* Tr. 433-434) he continued to perform heavy work as a pool builder until his disability onset date of

8

June 4, 2004 and there is no mention of plaintiff's right long finger being a problem for him during the aforementioned four-month window; thus, there was no reason for the ALJ to address this "impairment" since it occurred outside the relevant period under consideration. In addition, while there is also evidence of record regarding degenerative changes in plaintiff's c-spine from 2001 (Tr. 432) and a history of removal of pre-cancerous and cancerous skin lesions (*see, e.g.,* Tr. 179-199), again Odom continued to perform heavy work as a pool builder until his disability onset date of June 4, 2004 and there is no mention of either his c-spine or the skin lesions being a problem for him during the aforementioned four-month window; therefore, there was also no reason for the ALJ to mention these "impairments" in his decision. As well, the ALJ did not err in failing to mention the diagnosis of "cardiomyopathy" inasmuch as this diagnosis did not arise until after the expiration of Odom's insured status on September 30, 2004 (*see* Tr. 204-205 (Dr. Ralph Buckley's office notes dated October 21 and 28, 2004)), there is no significant probative evidence of this impairment during the relevant four-month window, and there is absolutely no evidence to suggest that Odom was treated for any "problems" associated with "cardiomyopathy" following Buckley's diagnosis.[5] Finally, while there is certainly evidence from the relevant four-month window that Odom was having some right knee pain, following arthroscopy of the right knee in early May of 2004 (*see* Tr. 292), and was receiving injections for this pain (*see* Tr. 286-291), the

---

[5]     Indeed, plaintiff did not return to the doctor (Dr. Jeanne Birkenhauer) who referred him to cardiologist Dr. Buckley after September 1, 2004 (*compare* Tr. 214 *with* Tr. 210), nor does it appear that he returned to Dr. Buckley after the "cardiomyopathy" diagnosis (*see* Tr. 249-250 (November 19, 2004 appointment cancelled)).

undersigned finds the ALJ's failure to mention this evidence harmless in light of the clear evidence of record that once plaintiff was released from his surgeon's care with respect to his right distal Achilles tendon repair (Tr. 271), he did not return to the office of his orthopedic surgeon, Dr. William Roberts, until more than two years later, on August 30, 2007, when he visited Bayside Orthopaedic, Sports Medicine and Rehab Center complaining of low back pain (Tr. 268-269). Thus, this Court does not fault the ALJ for simply noting that "[a]ll impairments within the period of consideration did not last for twelve months; therefore, the claimant has no severe impairment[.]" (Tr. 13.)

Based upon the foregoing, the affirmance of the ALJ's decision in this case will not constitute an abdication of this Court's "'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational[,]'" *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011), quoting *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981), inasmuch as the ALJ correctly determined that the impairments Odom experienced during the period of consideration did not last for twelve months and, therefore, did not constitute severe impairments.[6] In other words, merely because plaintiff may have suffered from the conditions he contends the ALJ did not consider does not establish that he has a severe impairment as a result of any of these conditions.

---

[6]     As for the other impairments, namely, c-spine problems, skin lesions, cardiomyopathy, and partial amputation of the right long finger, since they occurred outside the period of consideration the ALJ committed no error in failing to make mention of them.

As previously indicated, the claimant himself bears the burden of proving that he has a severe impairment or combination of impairments, *O'Bier v. Commissioner of Social Security Admin.,* 338 Fed.Appx. 796, 798 (11th Cir. Jul. 2, 2009), a burden which is twofold, *Casady v. Astrue,* 2009 WL 3109938, * 2 (M.D. Ala. Sept. 24, 2009). "Plaintiff must establish both that h[is] impairment or combination of impairments is medically 'severe,' *i.e.,* that it significantly limits h[is] ability to do basic work activities [] *and* that h[is] 'severe' impairment or combination of impairments lasted 'for a continuous period of at least 12 months[.]'" *Id.* (emphasis in original), quoting 20 C.F.R. § 404.1509; *see also* 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."); *Durden v. Astrue,* 2010 WL 1257707, *4 (M.D. Ga. Mar. 26, 2010) ("The impairment o[r] combination of impairments must not only be severe at step two, but they must also meet the duration requirement found in section 404.1509."); *cf. Barnhart v. Walton*, 535 U.S. 212, 218, 122 S.Ct. 1265, 1270, 152 L.Ed.2d 330 (2002) ("[T]he statute [42 U.S.C. § 423(d)(1)(A)], in the two provisions, specifies that the 'impairment' must last 12 months and also be severe enough to prevent the claimant from engaging in virtually any 'substantial gainful work.' The statute, we concede, nowhere explicitly says that the 'impairment' must be *that* severe (*i.e.,* severe enough to prevent 'substantial gainful work') for 12 months. But that is a fair inference from the language.").

This Court finds that the ALJ correctly determined that plaintiff's rupture and repair of his right Achilles tendon, an impairment which existed during the brief period from the alleged disability onset date of June 4, 2004 through his date last insured on September 30, 2004, was not a severe impairment because this impairment did not last for a continuous 12-month period. (*See* Tr. 11-13.) Indeed, what the record reveals is that once plaintiff's orthopedic surgeon released him on February 28, 2005 (Tr. 271), that is, approximately ten months after he quit working due to his right Achilles tendon symptoms (*see* Tr. 25), plaintiff did not return again to the Bayside Orthopaedic, Sports Medicine and Rehab Center complaining about his right heel/Achilles tendon; instead, he only returned some two plus years later complaining of low back pain and a low back injury on July 18, 2007 (*see* Tr. 268-270). Accordingly, plaintiff's right Achilles tendon rupture and repair does not constitute a severe impairment for which plaintiff is entitled to benefits during the period from alleged onset of June 4, 2004 to when his insured status expired on September 30, 2004 because that impairment did not last for a continuous period of 12 months.[7] The ALJ, therefore, properly concluded the "[a]ll

---

[7]      This same exact analysis pertains to Odom's knee impairment inasmuch as the record is clear that plaintiff did not stop work on June 4, 2004 because of this impairment and, further, Odom did not return to see Dr. Roberts for treatment of his knee after being released from his orthopedic surgeon's care on February 28, 2005. (*Compare* Tr. 271 *with* Tr. 268-270.) Additionally, there is no evidence that plaintiff's cardiomyopathy was diagnosed prior to the expiration of his insured status nor evidence that it lasted—or caused any significant limitations—for a continuous period of 12 months. (*See* Tr. 249-266.) Finally, there is no evidence of any mention of plaintiff's c-spine, skin lesions, or amputation of the right long finger during the approximately four month window of June 4, 2004 to September 30, 2004; thus, because these "impairments" occurred outside the period of consideration they properly were not mentioned by the ALJ and certainly could not be regarded as severe impairments for purposes of plaintiff's application for Title II benefits.

impairments within the period of consideration did not last for twelve months; therefore, the claimant has no severe impairment and cannot be found disabled, as the sequential evaluation ends at step two, regarding the existence of a severe impairment during the period prior to the expiration of the claimant's insured status." (Tr. 13.)

  **B.** <u>**Medical Expert Testimony Regarding the Onset of Disability.**</u> Plaintiff also contends that the ALJ contravened Social Security Rule 83-20 by failing to obtain medical expert testimony regarding the onset of disability.

  In a recent unpublished decision, a panel of the Eleventh Circuit concluded that an ALJ does not contravene SSR 83-20 where he ultimately finds that the claimant is not disabled inasmuch as SSR 83-20 only requires "the ALJ to obtain a medical expert in certain instances to determine a disability onset date *after* a finding of disability." *Klawinski v. Commissioner of Social Security*, 391 Fed.Appx. 772, 776, 2010 WL 3069718, *4 (11th Cir. Aug. 6, 2010) (emphasis supplied); *see also Scheck v. Barnhart,* 357 F.3d 697, 701 (7th Cir. 2004) ("The ALJ did not find that Scheck was disabled, and therefore, there was no need to find an onset date. In short, SSR 83-20 does not apply."); *Key v. Callahan,* 109 F.3d 270, 274 (6th Cir. 1997) ("The Commissioner responds to this argument by asserting that SSR 83-20 is not applicable to this case, since this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began. We agree. Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required.").

In this case, this Court agrees with the defendant that since the ALJ did not determine that Odom was disabled, there was no need to establish an onset date pursuant to SSR 83-20 (or otherwise). In other words, SSR 83-20 has no application in this case. Thus, plaintiff's argument in this regard fails.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 3rd day of July, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

14